```
            UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

JOE L. CASSIDY,                  :
                                 :CIVIL ACTION NO. 3:12-CV-1191
         Plaintiff,              :
                                 :(JUDGE RICHARD P. CONABOY)
         v.                      :
                                 :
POCONO MEDICAL CENTER,           :
                                 :
         Defendant.              :
                                 :
_____

## **MEMORANDUM**

Here we consider Defendant, Pocono Medical Center's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 13) filed on August 30, 2012, and accompanied by a supporting brief (Doc. 14). Plaintiff filed Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Her First Amended Complaint (Doc. 11) on September 28, 2012, after being granted an extension of time within which to do so (Doc. 21). Defendant did not file a reply brief and the time for doing so as passed. Therefore, this matter is ripe for disposition.

With this motion, Defendant seeks dismissal of all claims in Plaintiff's First Amended Civil Action Complaint which contains four counts: Count I - Title VII National Origin Discrimination; Count II - ADEA Age Discrimination; Count III - Title VII Retaliation; and Count IV - Wrongful Discharge. (Doc. 11.) The Court has accepted the parties' stipulation that Plaintiff is withdrawing her Wrongful Discharge claim, Count IV of her Amended

Complaint. (*See* Docs. 22, 23.) Therefore, we will address the remaining three claims in this Memorandum. For the reasons discussed below, we grant the motion in part and deny it in part.

## **I. Background**

Plaintiff is over forty years of age and is originally from the United Kingdom. (Doc. 11 ¶ 16.) She began her employment with Defendant as a registered nurse in the emergency room in February 2002. (Doc. 11 ¶ 17.)

In May of 2011, Plaintiff was called into "a so-called 'informal meeting'" with her director, Edward Knuth, Pat Casole, and Pat Watkins and was questioned about her name being in a patient's chart. (Doc. 11 ¶ 19.) The patient was a hospital employee admitted to the emergency room on April 25, 2011. (Doc. 11 ¶ 24.) Plaintiff was accused of violating HIPAA by allegedly accessing the patient's chart. (Doc. 11 ¶ 20.) Plaintiff was not involved in the patient's care. (Doc. 11 ¶ 21.) Plaintiff avers that she had never reviewed the chart and had no knowledge as to how her name was in the chart. (Doc. 11 ¶ 22.) She also avers that there are many ways someone else could have used Plaintiff's computer "or initiated some other mechanism by which Plaintiff's name was involuntarily placed in the patient's chart." (Doc. 11 ¶ 23.) At the meeting, Plaintiff said she knew nothing about the patient and denied accusations of "snooping" in the chart. (Doc. 11 ¶ 25-26.)

2

Several weeks later, Plaintiff was called to a formal meeting with Everett Saunders, Clinical Supervisor for the night shift, and Karen Giaquinto, Director of Compensation and Benefits. (Doc. 11 ¶ 28.) Plaintiff's union representative accompanied Plaintiff to this meeting. (Doc. 11 ¶ 29.) Plaintiff again denied allegations of wrongdoing. (Doc. 11 ¶ 30.) Plaintiff was not given an option to see where her name appeared in the chart. (Doc. 11 ¶ 33.)

At her termination hearing on May 30, 2011, Plaintiff learned that her name had not appeared in the body of the chart but was in the lab results section. (Doc. 11 ¶ 34.) She also learned that approximately 25 names appeared on the chart and only four people (three nurses and a secretary) were disciplined. (Doc. 11 ¶ 35.)

All of the individuals disciplined and terminated as a result of their names appearing in the chart were over forty years of age. (Doc. 11 ¶ 37.) Upon information and belief, Plaintiff avers that her replacement was under the age of forty and not from the United Kingdon. (Doc. 11 ¶ 38.)

Plaintiff also alleges that she was improperly targeted because of a previous incident where she refused to criminally alter medical records. (Doc. 11 ¶ 42.) In the earlier incident, Plaintiff was terminated for accusing management of requesting that Plaintiff make an alteration to a medical record, something she asserts she had refused to do. (Doc. 11 ¶ 39.) Pursuant to an arbitration award, Plaintiff got her job back and received

3

sufficient back pay to make her whole. (Doc. 11 ¶ 40.) Plaintiff avers that her return to work in December 2010 caused management "significant consternation." (Doc. 11 ¶ 41.) Deb Racke, a night clinical supervisor, was the individual who accused Plaintiff of falsely accusing management and was also involved in the accusations related to the patient's chart which resulted in Plaintiff's second termination. (Doc. 11 ¶ 43.)

## II. Discussion

### A.  *Motion to Dismiss Standard*

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007).

4

*Twombly* confirmed that more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

*McTernan,* 577 F.3d at 530. The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district

5

courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips* [*v. Co. of Alleghany*], 515 F.3d [224,] 234-35 [(3d Cir.2008 )]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not

6

precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## B. *Defendant's Motion*

### 1. National Origin Discrimination

Defendant maintains Plaintiff has not pled the fourth element of her Title VII National Origin Discrimination claim. (Doc. 14 at 7.) Specifically, Defendant argues that Plaintiff has not pled facts which would lead to an inference of unlawful discrimination because no facts establish that her employer treated a similarly situated employee not within the protected class differently than Plaintiff on the basis of national origin. (*Id.* at 7-8.) We agree.

Title VII prohibits an employer from discharging an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff lacks direct evidence of such discrimination, her claim falls under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., White v. Planned Sec. Services*, No. 11-4622, 2012 WL 1548962, at *2 (3d Cir. May 3, 2012) (not precedential). In this scheme, a plaintiff has the burden of demonstrating a prima face case of unlawful discrimination or

7

retaliation. 411 U.S. at 802. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action. *Id.* It is then up to the plaintiff to show that the employer's stated reason for its decision was a pretext for discrimination. *Id.* at 803.

Here Defendant's argument focuses on Plaintiff's prima facie case. (Doc. 14 at 7.) The existence of a prima facie case is a question of law to be decided by the court. *Sarullo v. USPS*, 352 F.3d 789, 797 (3d Cir. 2003). Making out a prima facie case requires a showing that:

> (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *McDonnell Douglas*, 411 U.S. at 802 . . . ; *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999). However, the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

352 F.3d at 797-98. *Sarullo* noted that "[t]he cental focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'" 352 F.3d at 798.

Defendant concedes, for purposes of this motion only, that

8

Plaintiff can satisfy the first three prongs of her prima facie case. (Doc. 14 at 7.) However, Defendant contends Plaintiff has not satisfied the fourth prong in that she does not establish facts that would lead to an inference of unlawful national origin discrimination. (Doc. 14 at 7.) Citing Plaintiff's averment that she "was treated less favorably than employees who were not from the United Kingdom," Defendant notes that four people were disciplined for their role in accessing a co-employee's medical records and Plaintiff makes no reference to their national origin. (Doc. 14 at 7 (citing Doc. 11 ¶¶ 47, 53).) Defendant also asserts that no facts in Plaintiff's Complaint establish that her employer treated a similarly situated employee, not within the protected class, differently than the Plaintiff on the basis of national origin. (Doc. 14 at 7-8.)

Plaintiff maintains that she has adequately pled this claim. (Doc. 24 at 6-8.) However, in so doing, she cites factual averments contained in her First Amended Complaint which do not have anything to do with national origin. (*See* Doc. 24 at 6-7 (citing Doc. 11 ¶¶ 20-36).) Following this recitation, Plaintiff adds that she does not aver that the four other people disciplined were terminated as she was and she does not aver that they denied accessing the chart as she does. (Doc. 24 at 8.)

We agree with Defendant that Plaintiff has failed to state a claim for national origin discrimination. Essentially Plaintiff's

9

national origin discrimination claim, as pled, is based only on her assertion that she was treated less favorably than employees who were not from the United Kingdom. (Doc. 11 § 47.) This conclusory assertion is insufficient to meet Plaintiff's pleading burden. If Plaintiff chooses to satisfy the requirements of the fourth prong of her prima facie case through comparator evidence,[1] her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Here Plaintiff states in her brief what her First Amended Complaint *does not aver* regarding comparators (Doc. 24 at 8), but these assertions do not satisfy the *Twombly* standard. Therefore, we grant Defendant's motion regarding Plaintiff's national origin discrimination claim. We also will allow Plaintiff an opportunity to amend this claim as we cannot say that amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## 2. **Age Discrimination**

Defendant contends that Plaintiff has failed to state a claim under the ADEA (Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.). (Doc. 14 at 6.) We agree.

---

[1] The causal nexus between the harm suffered and membership in a protected class (which is the essential consideration of the fourth prong) may be, but is not necessarily, shown by showing similarly situated individuals outside the plaintiff's class were treated more favorably. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-275 (3d Cir. 2010) (citing *Matzak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939 (3d Cir. 1997)).

The ADEA makes it unlawful for an employer to discriminate against any individual in hiring, termination, compensation, or conditions of employment on the basis of the individual's age. 29 U.S.C. § 623(a)(1). Where the plaintiff lacks direct evidence of discrimination, an ADEA claim is evaluated under the burden-shifting framework for Title VII cases outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). As set out above, this framework places the initial burden on the plaintiff to establish a prima face case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* To prevail, the plaintiff must prove, by a preponderance of the evidence, that the defendant's legitimate reason was in fact pretext of discrimination. *Id.*

The elements of the plaintiff's prima facie case are: 1) the plaintiff is forty years of age or older; 2) the defendant took an adverse employment action against the plaintiff; 3) the plaintiff was qualified for the position in question; and 4) the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith*, 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.*, 357

11

F.3d 366, 370 (3d Cir. 2004)). The Third Circuit Court of Appeals has also allowed that a plaintiff may satisfy the fourth prong of the prima facie case by showing that the employer had a continued need for someone to perform the same work after the plaintiff left. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 354 (3d Cir. 1999) (citation omitted).

Here, for purposes of this motion, Defendant contests only the fourth prong of the prima facie case. (Doc. 14 at 6.) Defendant states that "Plaintiff has nowhere in her Complaint stated that she was replaced by a sufficiently younger person who was similarly situated," adding that "Plaintiff makes no reference in her Complaint to being replaced at all." (*Id.*)

Plaintiff does not dispute these assertions, nor does she argue that she is proceeding under the alternative fourth prong set out in *Pivirotto*. (*See* Doc. 24 at 5-6.) Although Plaintiff maintains that she is not required to plead every element of a prima facie case, she recognizes that she "must at least make 'allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" (Doc. 24 at 5 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).) Plaintiff's conclusory assertion that she "has done so in this case" (Doc. 24 at 5) is insufficient to meet her burden under *Fowler*, *Twombly* and *Iqbal*. In support of her assertion that she has sufficiently pled her ADEA claim, Plaintiff's opposition brief

12

does not point to a single paragraph in her First Amended Complaint. (*See* Doc. 24 at 5-6.)

Based on the dearth of factual assertions supporting Plaintiff's ADEA claim, we grant Defendant's motion regarding this claim. We also will allow Plaintiff an opportunity to amend her ADEA claim as we cannot say that amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### 3. **Retaliation**

Defendant asserts that Plaintiff's retaliation claim is improper because this claim was not advanced within ninety (90) days of when she received a right to sue letter from the EEOC. (Doc. 14 at 8.) Plaintiff responds that Defendant's argument ignores the "relation back" provisions of Federal Rule of Civil Procedure 15(c). (Doc. 24 at 8.) Plaintiff further avers that the retaliation claim in her First Amended Complaint is proper when considered in the context of Rule 15(c)(1). (*Id.*) Defendant did not file a reply brief and, therefore, did not refute Plaintiff's argument. Because it is Defendant's burden to show it is entitled to dismissal of a claim and Defendant has not met this burden, Defendant's requested dismissal of Plaintiff's retaliation claim is denied.

### III. Conclusion

For the reasons discussed above, Defendant, Pocono Medical

13

Center's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 13) is granted in part and denied in part.  The motion is granted as to Plaintiff's national origin and age discrimination claims, Counts I and II of her First Amended Civil Action Complaint (Doc. 11).  The motion is denied as to Plaintiff's Title VII retaliation claim, Count III of her First Amended Civil Action Complaint (Doc. 11).  Because we cannot say amendment of the dismissed claims would be futile, Counts I and II are dismissed without prejudice and Plaintiff is granted leave to further amend her complaint.  An amended complaint is to be filed within fourteen (14) days of the date of this Memorandum and simultaneously filed Order.

S/Richard P. Conaboy<br>
RICHARD P. CONABOY<br>
United States District Judge

DATED: October 19, 2012