UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOE L. CASSIDY,                  :
                                 :CIVIL ACTION NO. 3:12-CV-1191
          Plaintiff,             :
                                 :(JUDGE RICHARD P. CONABOY)
          v.                     :
                                 :
POCONO MEDICAL CENTER,           :
                                 :
          Defendant.             :
                                 :

_____

**MEMORANDUM**

Here we consider Defendant, Pocono Medical Center's Motion for
Summary Judgment Pursuant to Federal Rule of Civil Procedure 56.
(Doc. 36.)  With this Motion, Defendant seeks judgment in its favor
on all remaining claims in Plaintiff's Second Amended Civil Action
Complaint (Doc. 27): Count II for violation of the Age
Discrimination in Employment Act; Count III for Title VII
retaliation; and Count IV for violations of the Pennsylvania Human
Relations Act for age discrimination and retaliation.[1]  For the
reasons discussed below, we conclude Defendant's Motion is properly
granted.

## I. Background

### A. Factual Background

Plaintiff began her employment with Defendant as a registered

_____

[1]  The parties stipulated to the dismissal with prejudice of
Count I of Plaintiff's Second Amended Civil Action Complaint, a
Title VII National Origin Discrimination claim.  (Doc. 33.)  The
Court approved the stipulation by Order of March 8, 2013.  (Doc.
34.)

nurse in the emergency room in February 2002.  (Doc. 27 ¶ 17.)  At the time of the allegations set out in her Second Amended Complaint, Plaintiff was 44 years of age.  (Doc. 37 ¶ 1; Doc. 41 at 13 ¶ 1.)

In May of 2011, Plaintiff was called into "a so-called 'informal meeting'" with her director, Edward Knuth, Pat Casole, and Pat Watkins and was questioned about her name being in a patient's chart.  (Doc. 27 ¶ 19.)  The patient was a hospital employee admitted to the emergency room on April 25, 2011.  (Doc. 27 ¶ 24.)  Plaintiff was accused of violating HIPAA by allegedly accessing the patient's chart.[2]  (Doc. 27 ¶ 20.)  Plaintiff was not involved in the patient's care.  (Doc. 27 ¶ 21.)  Plaintiff avers that she had never reviewed the chart and had no knowledge as to how her name was in the chart.  (Doc. 27 ¶ 22.)  She also avers that there are many ways someone else could have used Plaintiff's computer "or initiated some other mechanism by which Plaintiff's name was involuntarily placed in the patient's chart."  (Doc. 27 ¶ 23.)  At the meeting, Plaintiff said she knew nothing about the patient and denied accusations of "snooping" in the chart.  (Doc. 27 ¶¶ 25-26.)

Several weeks later, Plaintiff was called to a formal meeting with Everett Saunders, Clinical Supervisor for the night shift, and

---

[2]  The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") protects the privacy, security, and confidentiality of health information.  www.hhs.gov/ocr/privacy/index.html.

Karen Giaquinto, Director of Compensation and Benefits. (Doc. 27 ¶ 30.) Plaintiff's union representative accompanied Plaintiff to this meeting. (Doc. 27 ¶ 31.) Plaintiff again denied allegations of wrongdoing, (Doc. 27 ¶ 32), informing the committee that she could not recall the night the patient was in the ER (Doc. 27 ¶ 33). Plaintiff was not given an option to see where her name appeared in the chart. (Doc. 27 ¶ 34.)

At her termination hearing on May 30, 2011, Plaintiff learned that her name had not appeared in the body of the chart but was in the lab results section. (Doc. 27 ¶ 36.) She also learned that approximately 25 names appeared on the chart and only four people (three nurses and a secretary) were disciplined. (Doc. 27 ¶ 38.)

Plaintiff was terminated on June 6, 2011. (Doc. 42 at 2.) Plaintiff was replaced by an individual under the age of 40. (Doc. 37 ¶ 46.)

Pamela Watkins, Defendant's Director of Internal Audit and Compliance, testified that she had discussions with eight employees implicated in the incident at issue: Plaintiff, Paul Vrablic, Steve Gember, Christina Cratch, Sasha Sallard, Kelly Kramer, Margarita Harlin, and Penny Glascow. (Watkins Dep. 24:7-25:7 (Doc. 36-5 at 3-4).) She further testified: 1) Vrablic had no explanation except to state he could have left his computer on and someone else had access to it: 2) Gember said he may have been in the computer system because the charge person may have had to move her car and

he would have been the charge person for those few minutes and would check out the people in the ER; 3) Cratch did not offer any defense but did not admit access to the chart; 4) Sallard said she was coming on as the charge person at the time and she had reviewed a number of charts of patients, as necessary; 5) Kelly said she was to be assigned to the area where this patient was and had gone in to check on the situation with the patients but she was ultimately either not assigned to that area or reassigned to another are; 6) Harlin, whose name did not specifically appear in the record, was called in to a meeting for a different reason--something to do with a name set up in the past that had been misused by someone and was linked to a computer from which an improper log-in occurred and she had used the computer at some time that day; and 7) Penny Glascow, an employee who worked in radiology, offered the defense that maybe she left her computer on and someone else logged in. (Watkins Dep. 33:6-42:2 (Doc. 36-5 at 6-8).) In addition to Plaintiff, Defendant terminated Vrablic, Gember, and Glascow. (Watkins Dep. 42:5-43:14 (Doc. 36-5 at 8).) Watkins testified that Cratch would have been terminated, but she resigned before any decision was made. (Watkins Dep. 43:15-44:3 (Doc. 36-5 at 8).) Kratch had not been given an option to resign. (Watkins Dep. 43:17-21 (Doc. 36-5 at 8).) Sallard, Kramer, and Harlin were not terminated. (Watkins Dep. 44: 8-23 (Doc. 36-5 at 8).)

Watkins estimated Glascow's age to be from late 30's to mid-

40's, Vrablic's age to be over mid-40's, Gember's age to be late 40's, and Cratch's age to be late 20's.  (Watkins Dep. 42:18-22, 44:4-7 (Doc. 36-5 at 8); Watkins Dep. 58:3-18 (Doc. 41-3 at 16).)

Plaintiff alleges that she was improperly targeted because of her age and the fact that she had engaged in prior protected activity.  (Doc. 27 ¶ 40.)  In the earlier incident, Plaintiff asserts she "previously had refused to alter a medical record for Defendant and was previously terminated for accusing management of requesting that Plaintiff make the alteration."  (Doc. 27 ¶ 47.)  Pursuant to an arbitration award following a union grievance, Plaintiff got her job back and received sufficient back pay to make her whole.  (Doc. 27 ¶ 48.)  Plaintiff avers that her return to work in December 2010, allegedly "caus[ed] significant consternation to management."  (Doc. 27 ¶ 49.)  Deb Racke, a night clinical supervisor, was the individual who accused Plaintiff of falsely accusing management and was also involved in the accusations related to the patient's chart which resulted in Plaintiff's second termination.  (Doc. 27 ¶ 51.)  Plaintiff's retaliation claim is based on her assertion that Defendant retaliated against her because she won her job back after a March 2010 termination.  (Doc. 37 ¶ 12; Doc. 41 ¶ 12.)

Plaintiff testified that before May 30, 2011, she was not subjected to age-related slurs by persons in the Emergency Department.  (Plaintiff's Dep. 19:16-19 (Doc. 41-4 at 20).)

Edward Knuth, Defendant's clinical director of the emergency department, testified that in February 2013 (the time of the deposition) about 126 staff were employed in the Emergency Department at Pocono Medical Center. (Knuth Dep. 66:22-23 (Doc. 41-2 at 18).) Knuth estimated that the average age of a nurse in the Emergency Department was mid to late forties when Plaintiff was employed there and continued to be the same. (Knuth Dep. 66:9-18 (Doc. 41-2 at 18).) Karen Giaquinto estimated the average age of a nurse in the hospital to be about 47. (Giaquinto Dep. 46:2-6 (Doc. 36-3 at 4).) Giaquinto also testified that Defendant has a zero tolerance policy for HIPPA violations. (Giaquinto Dep. 25:23-26:4 (Doc. 36-3 at 3).)

## B. Procedural Background

Plaintiff filed this action on June 21, 2012. (Doc. 1.) Following the filing of Defendant Pocono Medical Center's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 5), Plaintiff filed her First Amended Civil Action Complaint (Doc. 11). Defendant then filed Defendant Pocono Medical Center's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 13.) By Order of October 19, 2012, the Court granted the Motion in part and denied it in part. (Doc. 26.) On November 2, 2012, Plaintiff filed her Second Amended Civil Action Complaint (Doc. 27), the operative Complaint here as amended by stipulation (*see* Docs. 33, 34). As set out

previously, the claims remaining are Count II for violation of the Age Discrimination in Employment Act; Count III for Title VII retaliation; and Count IV for violations of the Pennsylvania Human Relations Act for age discrimination and retaliation.

Defendants filed the Motion under consideration here on March 13, 2013. (Doc. 36.) The Motion was accompanied by Defendant's Statement of Undisputed Facts in Support of Summary Judgment (Doc. 37) and Defendant, Pocono Medical Center's Brief in Support of Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Doc. 38). After requesting and being granted an extension of time to file her opposition brief (Docs. 39, 40), Plaintiff filed her Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 41) on April 10, 2013. Incorporated as part of this filing is Plaintiff's Response in Opposition to Defendant's Statement of Undisputed Material Facts in Support of Summary Judgment Motion (Doc. 41 at 13-15). With the April 18, 2013, filing of Defendant's Reply Brief in Response to Plaintiffs Opposition to Defendants Motion for Summary Judgment (Doc. 42), this Motion was fully briefed and ripe for disposition.

## I. Discussion

A. ***Summary Judgment Standard***

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of

7

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the

like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324. Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff. *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## B. Defendants' Motion

## 1. Age Discrimination

Defendant maintains it is entitled to summary judgment on Plaintiff's age discrimination claims brought under the ADEA and PHRA. (Doc. 38 at 5, 9.) For the reasons discussed below, we agree.

Essentially the same analysis applies to age discrimination claims brought under the ADEA and PHRA. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004). The ADEA makes it unlawful for an employer to discriminate against any individual in hiring, termination, compensation, or conditions of employment because of the individual's age. 29 U.S.C. § 623(a)(1). Where the

plaintiff lacks direct evidence of discrimination, an ADEA claim is evaluated under the burden-shifting framework for Title VII cases outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). This framework places the initial burden on the plaintiff to establish a prima face case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* To prevail, the plaintiff must prove, by a preponderance of the evidence, that the defendant's legitimate reason was in fact pretext of discrimination. *Id.*

To succeed at the third step of the burden-shifting framework, the plaintiff must "'present evidence contradicting the core facts put forward by the employer as the legitimate reasons for its decision.'" *Mindock v. Weir Minerals North America*, No. 11-4416, 2012 WL 4903012, at *3 (3d Cir. Oct. 17, 2012) (not precedential) (quoting *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 n.6 (3d Cir. 1984)). "The plaintiff must demonstrate that the defendant's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a fact finder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a 'but for' cause of the

10

adverse employment action." *Abels v. DISH Network Services, LLC*,
No. 12-1291, 2012 WL 6183558, at *3 (3d Cir. Dec. 12, 2012) (citing
*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 19994); *Keller v.
Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)).
Our Circuit Court has further explained that

> [m]erely questioning the wisdom of an
> employer's decision is not tantamount to
> impeaching its legitimacy. For legitimacy to
> be called into question, the plaintiff must
> do more than argue the employer was "wrong or
> mistaken;" rather, he "must demonstrate such
> weaknesses, implausibilities,
> inconsistencies, incoherencies, or
> contradictions in the employer's proffered
> legitimate reasons for its action that a
> reasonable factfinder *could* rationally find
> them 'unworthy of credence,' and hence infer
> 'that the employer did not act for [the
> asserted] non-discriminatory reasons.'"

*Baker v. United Defense Industries, Inc.*, 403 F. App'x 751, 756 (3d
Cir. 2010) (not precedential) (quoting *Fuentes v. Perskie*, 32 F.3d
at 764).

In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009),
the Court considered whether the ADEA allowed a mixed motive claim
(where a plaintiff claims that she was treated adversely because of
both permissible and impermissible reasons) and concluded the
statutory text of the ADEA does not authorize mixed motives age
discrimination claims. 557 U.S. at 171, 175. The Court reasoned
that the words "because of" in § 623(a)(1) mean "by reason of: on
account of" and "[t]hus, the ordinary meaning of the ADEA's
requirement that an employer took adverse action 'because of' age

11

is that age was the 'reason' that the employer decided to act."
557 U.S. at 176. The Court concluded that to establish a disparate
treatment claim under the ADEA, a plaintiff must prove that age was
the "but-for" cause of the employer's adverse action. *Id.* at 176
(citing, *inter alia, cf.* W. Keeton, D. Dobbs, R. Keeton, & D. Owen,
Prosser and Keeton on Law of Torts 265 (5th ed. 1984) ("An act or
omission is not regarded as a cause of an event if the particular
event would have occurred without it")). As stated by the Third
Circuit Court of Appeals, *Gross* construed the ADEA's statutory
language "as requiring the plaintiff to prove but-for causation
from the outset of an ADEA case." *Smith*, 589 F.3d at 690 (citing
*Gross*, 557 U.S. at 177-78). This standard does not "require that
age discrimination be the sole cause for an adverse employment
decision to prevail on an age discrimination claim." *Robinson v.
City of Philadelphia*, 491 F. App'x 295, 299 (3d Cir. 2012) (not
precedential) (citing *Miller v. CIGNA Corp.*, 47 F.3d 586, 588 (3d
Cir. 1995)).

To establish a prima facie case of age discrimination, a
plaintiff must show the following: "(1) she is forty years of age
or older; (2) the defendant took an adverse employment action
against her; (3) she was qualified for the position in question;
and 4) she was ultimately replaced by another employee who was
sufficiently younger to permit an inference of discriminatory
animus." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir.

12

2013).

Defendant first maintains Plaintiff cannot establish a prima facie case of age discrimination because she has not shown that similarly situated employees were treated differently. (Doc. 38 at 5.) While we agree that Plaintiff has not made such a showing, we do not agree it is necessary for her to do so to establish a prima facie case.

Defendant's argument is based on the assertion that the fourth element of the prima facie case requires a showing that "the younger person retained was 'similarly situated.'" (Doc. 38 at 5 (citing *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235 (3d Cir. 1999)). Defendant's reliance on *Showalter* is misplaced in that *Showalter* discussed the "similarly situated" requirement in the context of a reduction in force case. 190 F.3d at 236. Although we do not read *Showalter* to create a "similarly siutated" requirement at the prima facie stage of the *McDonnell Douglas* framework, we need not discuss this matter further because there is no basis upon which to find it applicable to the case at bar.[3]

---

[3] It is true that the Third Circuit has cautioned "that the elements of [the] prima facie case must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996); *see also Doe v. C.A.R.S Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (quoting *Geraci*, 82 F.3d at 581). However, a requirement that a retained employee be "similarly situated" to the discharged employee has a logical basis in a reduction in force ("RIF") case

Defendant does not otherwise argue that Plaintiff cannot satisfy the elements of her prima facie case.  We conclude that Plaintiff has made a prima facie showing: Plaintiff was 44 years old at the time of termination, she was qualified for her position, she suffered an adverse employment action, and the person who replaced her, a man in his 20's, was sufficiently younger to permit an inference of discrimination.  (Doc. 38 at 5; Doc. 41 at 6.)

At the second stage of the *McDonnell Douglas* framework, we must decide whether Defendant has come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Reeves*, 530 U.S. at 142.  This is a burden of production. *Fuentes*, 32 F.3d at 763.  Defendant states "the proof that Plaintiff improperly accessed a patient/co-employees [sic] chart or the Defendant's belief she did constitutes a legitimate, non-discriminatory reason for her termination."  (Doc. 38 at 7.)  Here the record clearly supports the reason proffered by Defendant.

Turning to the third stage, Plaintiff asserts she "can satisfy the 'but for' test by a preponderance of the evidence."  (Doc. 41 at 6.)  In support of this assertion, Plaintiff points to the following: 1) Edward Knuth, the clinical director of the Emergency Department, testified that one other nurse fired with Plaintiff, Gember, was about fifty, and another, Vrablic, "was hovering at

which does not apply to a case where an employee was discharged outside the RIF context and *replaced* by another.

14

about forty," and Pamela Watkins, the Director of Internal Audit and Corporate Compliance, agreed with Knuth (Doc. 41 at 7); 2) Knuth testified that Gember believed the reason for the termination was manufactured and that Gember had said something to the effect that Defendant engaged in a plot or conspiracy (*id.*); 3) both Gember and Vrablich denied accessing the patient's chart improperly (*id.*); 4) Defense counsel would not allow Knuth to answer the question of whether Gember and Vrablic "proffered a reasonable explanation, in their minds, as to why the chart wasn't accessed" (*id.* at 7-8); 5) Knuth testified that another nurse, Denise Parker, made a comment saying "you people got rid of [Plaintiff], now you are trying to get rid of me" (*id.* at 8); 6) Knuth testified that Plaintiff was replaced by a male in his mid-twenties who was not given a pay increase when he took Plaintiff's position (*id.*); and 7) if Plaintiff walked away from her computer station without logging off, it would have remained accessible for forty-five minutes and anyone could access the patient's chart through Plaintiff's computer (*id.* at 9).

Plaintiff's reliance on Knuth's and Watkins' testimony about the ages of Gember and Vrablic is unavailing. In that four people were terminated and another would have been had she not resigned, Plaintiff cannot support but-for causation by establishing that two of the five (herself and Gember) were in the protected age bracket and one other (Vrablic) may have been in that he was "hovering at

15

about forty years old." (Doc. 41 at 7.) Furthermore, the record shows that the other terminated employee (Glascow) was "anywhere from late 30's to mid-40's" (Watkins Dep. 42:18-22 (Doc. 36-5 at 8)), and the employee who would have been terminated had she not resigned (Cratch) was believed to be in her late 20's (Watkins Dep. 44:4-7 (Doc. 36-5 at 8)).

Plaintiff's reliance on Knuth's testimony that Gember believed the reason for the termination was manufactured and that Gember had said something to the effect that Defendant engaged in a plot or conspiracy does not support but-for causation. If Plaintiff seeks to offer Gember's statements for the truth of Gember's assertions, she runs into hearsay problems pursuant to Rules 801 and 802 of the Federal Rules of Evidence. Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) (citation omitted). When offering hearsay statements as evidence in opposition to summary judgment, the offering party must show that the statement is capable of admission at trial. *Id.* Here Plaintiff has not done so. If Plaintiff seeks to offer Gember's statements without regard to whether they are accurate, she confronts the problem of general relevance. Finally, admissibility at trial aside, Gember's statements present a subjective view offered without factual foundation. Because the Court should not credit conclusory statements offered without

factual support by a party seeking to defeat summary judgment, *Chambers ex rel. Chambers v. School District of Philadelphia Bd. of Educ.*, 587 F.3d 176, 197 (3d Cir. 2009) (citing *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972) ("Conclusory statements [and] general denials . . . [are] insufficient to avoid summary judgment.")), Gember's statements cannot be considered supportive of Plaintiff's attempt to show pretext.

Knuth's testimony that both Gember and Vrablich denied accessing the patient's chart improperly does not show pretext for age discrimination in that the four employees terminated all denied improper activity and, as discussed above, Plaintiff has not produced evidence that all were in the protected age group. Furthermore, the record indicates that Defendant chose to terminate all employees deemed not to have a valid reason for having accessed the patient's chart. Also to be considered is Defendant's testimony, uncontraverted by Plaintiff, that it has a zero tolerance policy regarding HIPAA violations and, if the facts indicate someone has violated HIPAA, the employee is terminated. (Gianquinto Dep. 25:23-26:24 (Doc. 36-3 at 3); *see also* Watkins Dep. 47:19-48:8 (Doc. 36-5 at 9).)

Plaintiff's assertion that Defense counsel would not allow Knuth to answer the question of whether Gember and Vrablic "proffered a reasonable explanation, in their minds, as to why the

chart wasn't accessed" (Doc. 41 at 7-8), considered in context, does not show discrimination or pretext. At Knuth's deposition, Defendant's counsel directed Knuth not to answer because he objected to the form of the question, asking how Knuth could "possibly tell what [Gember and Vrablic] had in their minds?" (Knuth Dep. 81:19-82:2 (Doc. 41-2 at 22).) Plaintiff's counsel did not rephrase the question. Given this scenario, we can draw no inference from Defendant's counsel's instruction to Knuth.

Knuth's testimony that another nurse, Denise Parker, made a comment saying "you people got rid of [Plaintiff], now you are trying to get rid of me" (Doc. 41 at 8) runs into the same problems as Knuth's testimony about Gember's statements regarding a perceived plot or conspiracy. The context in which Parker made the statement further undermines any reliance upon it: Knuth testified that Parker's statement was in response to being served a discipline on an unrelated matter and Parker had become "abrupt, angry, yelling, and those are some of the words she chose to use." (Knuth Dep. 87:12-23 (Doc. 41-2 at 23).) Finally, even if someone were "out to get" Plaintiff (Knuth Dep. 84:14 (Doc. 41-2 at 22)), absolutely no evidence supports an inference of an age related motivation and no evidence suggests that Defendant was "out to get" any other discharged employee on the basis of age or any other reason.

The fact that Plaintiff was replaced by a male in his mid-

twenties satisfied the fourth element of Plaintiff's prima facie case. However, without more, it does not show that the reason proffered by Defendant was a pretext for age discrimination. Plaintiff does not say why the fact that her replacement was not given a pay increase when he took Plaintiff's position is relevant. (*See* Doc. 41 at 8.) Assuming the assertion to be true, without more it does not support her claim.

Defendant's rejection of Plaintiff's denial and accompanying alternate scenario (if Plaintiff walked away from her computer station without logging off, it would have remained accessible for forty-five minutes and anyone could access the patient's chart through Plaintiff's computer (Doc. 41 at 9)) is not suggestive of pretext or age discrimination. Of the four people terminated, three offered the same explanation and all were rejected. Gember's explanation, offered in a similar "maybe this happened" mode, was also rejected. (Watkins Dep. 33:14-23, 43:13-14 (Doc. 36-5 at 6, 8).) As discussed above, the varied ages of those terminated, the similar treatment of all who did not have what Defendant deemed a satisfactory reason for accessing the patient's chart, and the total absence of evidence suggesting age related animus undermine Plaintiff's reliance on terminated employees' subjective beliefs about the worthiness of their proffered excuse.

Finally, taking all of Plaintiff's supporting assertions together, we conclude she has not satisfied her burden of showing

that Defendant's proffered reason was a pretext for discrimination. Plaintiff simply has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 764 (internal quotations and citations omitted).

Plaintiff has not shown that age played any role in her termination. She has not produced evidence from which a reasonable factfinder could conclude that but-for her age she would not have been terminated. Because Plaintiff has not satisfied her burden at the third stage of the *McDonnell Douglas* analysis, summary judgment in Defendant's favor is properly granted on Plaintiff's age discrimination claims under the ADEA and PHRA.

## 2. Retaliation

Defendant asserts Plaintiff cannot establish a prima facie case of retaliation because she did not engage in protected activity. (Doc. 38 at 7-9.) For the reasons discussed below, we agree.

To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence of each of the following: 1) she engaged in activity protected by Title VII; 2) the employer took an adverse employment action against her; and 3) there was a

causal connection between participation in the protected activity and the adverse action.  *Moore v. City of Philadelphia*, 461 F.3d 321, 341 (3d Cir. 2006).  *Moore* further explained each element of the prima facie case.

> With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause").  *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006).  Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII.  *Clark County v. Breeden*, 532 U.S. 268, 271 . . . (2001) (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (retaliation plaintiff must "act[ ] under a good faith, reasonable belief that a violation existed").  Moreover, the employee's "opposition" to unlawful discrimination must not be equivocal.  *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

*Moore*, 461 F.3d at 341.  Retaliation claims asserted under the PHRA are generally analyzed under the same standards as Title VII retaliation claims.  *See Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 300 (3d Cir. 2007).

Here Defendant argues that the activity upon which Plaintiff's retaliation claim is alleged to be based is not protected activity.

(Doc. 38 at 9.)  Defendant states Plaintiff's claim is based on her assertion "that she was retaliated against due to the fact that a previous termination of the plaintiff was overturned by an arbitration panel.  Plaintiff articulated a belief that her employer was resentful of her reinstatement and terminated her more than a year later."  (Doc. 38 at 7.)

Plaintiff urges the Court to consider her participation in a union grievance proceeding to be protected activity "under the unique circumstances of this case."  (Doc. 41 at 11.)  Plaintiff relies on *Watts v. Kroger Co.*, 170 F.3d 505, 511 (5th Cir. 1999), in support of her assertion that "under certain facts and circumstances the utilization of a union grievance could be considered a protected activity under Title VII."  (Doc. 41 at 10.)

Plaintiff provides scant argument in support of her request for the Court to broadly construe the protected activity requirement of her prima facie case.  Rather, she summarily states that the Court should consider the filing of the grievance, in which she claimed that she was wrongfully terminated for making a whistleblower complaint, to be protected.  (Doc. 41 at 11.)  We decline to do so.  Plaintiff's inadequate argument, her asserted basis for the grievance, and our independent review of the arbitration decision (Doc. 41-8 at 2-10) indicate no Title VII activity is implicated in the filing or resolution of her grievance.  *Watts* does not support Plaintiff's position in that the

Fifth Circuit did not consider the grievance in the context of a prima facie case of Title VII retaliation.  170 F.3d at 511. Further, the plaintiff in *Watts* filed a union grievance *alleging sexual harassment*.  170 F.3d at 508.  Thus, *Watts* offers no support for Plaintiff's position.

In the Third Circuit Court of Appeals, the requirement that the protected activity be related to conduct prohibited by Title VII is clear.  "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006); *see also Eldridge v. Municipality of Norristown*, No. 12-2282, 2013 WL 811956 (Table), at *2 (3d Cir. Mar. 6, 2013) (citing *Curay-Cramer*, 450 F.3d at 135).  Although it is "the message [the plaintiff] conveyed, and not the medium of the conveyance" which is important, specificity is required.  *Barber*, 68 F.3d at 701-02.  Such specificity is lacking here.  Importantly, Plaintiff makes no claim that her grievance was related to a Title VII protected activity as that term has been defined in the Third Circuit.  Therefore, Plaintiff has failed to establish the first element of her prima facie case and summary judgment in Defendant's favor on her Title VII retaliation claim and related PHRA claim is appropriate.

### III. Conclusion

For the reasons discussed above, Defendant, Pocono Medical

Center's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Doc. 36) is granted.  Because judgment in Defendants' favor on all claims remaining in Plaintiff's Second Amended Civil Action Complaint (Doc. 27) is proper, all claims are dismissed with prejudice.  An appropriate Order is filed simultaneously with this action.

S/Richard Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: May 31, 2013 _____